UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KAYLA M. PATTERSON,

    Plaintiff,

v.                                                       Case No. 8:23-cv-1238-CPT

MARTIN O'MALLEY,
Commissioner of Social Security,[1]

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of her claim for Supplemental Security Income (SSI). (Docs. 19, 21). For the reasons discussed below, the Commissioner's decision is reversed, and the case is remanded.

I.

The Plaintiff was born in 1996, has a high school education, and has no past relevant work experience. (R. 41, 44, 47). On September 17, 2019, the Plaintiff applied for SSI benefits, alleging disability as of February 10, 2012, due to migraines,

---

[1] Mr. O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Federal Rule of Civil Procedure 25(d), Mr. O'Malley is substituted for the former Acting Commissioner, Kilolo Kijakazi, as the Defendant in this suit.

severe photophobia,[2] anxiety disorder, psoriatic arthritis,[3] and Raynaud's phenomenon.[4] (R. 65, 205). The Social Security Administration (SSA) denied the Plaintiff's application both initially and on reconsideration. (R. 77–78, 95–96).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter, at which the Plaintiff and her counsel both appeared. (R. 39–64). Plaintiff's counsel requested at the outset of this proceeding that the Plaintiff be allowed to amend her alleged disability onset date from February 10, 2012, to her application date of September 17, 2019. (R. 43–44). The ALJ agreed to this modification.[5] (R. 44). The Plaintiff thereafter testified, as did a vocational expert (VE). (R. 39–64).

In a decision issued in September 2022, the ALJ found that the Plaintiff: (1) had not engaged in substantial gainful activity since the date of her application in September 2019; (2) had the severe impairments of Raynaud's disease, inflammatory

---

[2] "Photophobia, or photalgia, is [l]ight-induced pain, especially of the eyes[.]" *Lundberg v. Unum Life Ins. Co. of America*, 2024 WL 1461433, at *4 n.11 (D. Minn. Apr. 4, 2024) (quoting *Photalgia*, STEDMAN'S MEDICAL DICTIONARY (28th ed. 2006)) (internal quotation marks omitted).
[3] "Psoriatic arthritis is a form of arthritis that causes joint pain, stiffness, and swelling, along with red patches topped with silvery scales on the skin." *Bobbie W. v. Berryhill*, 2018 WL 3980085, at *1 n.2 (S.D. Ind. Aug. 21, 2018) (citation omitted).
[4] Raynaud's phenomenon is "a disorder that causes the blood cells in the fingers and toes to constrict when an individual is cold or stressed." *Martz. v. Comm'r, Soc. Sec. Admin.*, 649 F. App'x 948, 950 (11th Cir. 2016).
[5] In granting this request, the ALJ noted that September 17, 2019, was the "protective filing date." (R. 44). As one court has explained, the "protective filing date is an online tool that allows a claimant to let the [SSA] know they are interested in filing for SSI. The agency records the date of the protective filing request . . . and then schedules an appointment for the claimant or contacts the claimant to take their application." *Klimowicz v. Comm'r of Soc. Sec.*, 2024 WL 1603996, at *1 n.1 (M.D. Fla. Feb. 8, 2024).

2

arthritis, and migraine headache disorder with photophobia; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listings;[6] (4) had the residual functional capacity (RFC) to perform light work subject to some restrictions; and (5) based on the VE's testimony, could engage in a number of occupations that were sufficiently prevalent in the national economy. (R. 20–38). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 33).

The Appeals Council denied the Plaintiff's request for review. (R. 1–6). Accordingly, the ALJ's decision became the final decision of the Commissioner. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted).

II.

The Social Security Act (the Act) defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).[7] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by

---

[6] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). When a claimant's affliction matches an impairment on the list, the claimant is automatically entitled to disability benefits. *Id.*; *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

[7] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

3

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

To determine whether a claimant is disabled, the Social Security Regulations prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[8] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listed impairments; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 416.920(a)(4); 20 C.F.R. § 404.1520(a)(4)). Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove she cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the

---

[8] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the claimant's disability application after a hearing. 42 U.S.C. § 405(g). Judicial review is confined to ascertaining whether the Commissioner applied the correct legal standards and whether the decision is buttressed by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted). In evaluating whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, even if it finds that the evidence preponderates against the Commissioner's determination. *Viverette*, 13 F.4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). Further, while a court will defer to the Commissioner's factual findings, it will not defer to his legal conclusions. *Viverette*, 13 F.4th at 1313–14; *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

III.

The Plaintiff raises two challenges on appeal: (1) the ALJ applied the incorrect standard at step four in considering the relevance of the Plaintiff's amended onset date; and (2) the ALJ also erred at step four in assessing the Plaintiff's symptoms from photophobia. (Doc. 19 at 2). After careful review of the parties' submissions and the record, the Court finds that the Plaintiff's first challenge has merit and alone warrants reversal.

As noted above, the ALJ's task at step four is to determine a claimant's RFC and her ability to engage in her past relevant work. *See* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945. To do so, the ALJ must discern from all the pertinent evidence before her what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. *Id*. § 416.945(a)(1).

In resolving this issue, an ALJ has a "basic duty" to compile "a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) (citing 20 C.F.R. § 416.912(d)). Where, as here, a claimant seeks SSI benefits, an ALJ satisfies this obligation by "develop[ing] [the claimant's] complete medical history for at least the [twelve] months preceding the month in which [the claimant] file[d] [her] application unless there is a reason to believe that development of an earlier period is necessary or unless [the claimant] say[s] that [her] disability began less than [twelve] months before [she] filed [her] application." 20 C.F.R. § 416.912(b)(1).

Importantly, however, while an ALJ may take into account records that predate a claimant's submission of her SSI application, the SSA will not pay SSI benefits for

6

any period before the claimant's application date. *See* 20 C.F.R. § 416.501 ("Payment of [SSI] benefits may not be made for any period that precedes the first month following the date on which an application is filed or, if later, the first month following the date all conditions for eligibility are met."); *see also* 20 C.F.R. § 416.202(g) (explaining that a claimant will be eligible for SSI benefits if she meets a series of requirements, including the filing of an application). In other words, SSI benefits "relate to the SSI application date and forward." *Schulman v. Comm'r of Soc. Sec.*, 2023 WL 5091355, at *4 (M.D. Fla. Aug. 9, 2023) (citing 20 C.F.R. § 416.335).

In this case, the ALJ began her step four analysis by recognizing the Plaintiff's testimony that her "primar[y] limiting condition [was] her migraines with photophobia, which result[ed] in an aura and affect[ed] her ability to see." (R. 26). The ALJ also noted that the Plaintiff testified to suffering from arthritis and an inability to use her hands "on bad days." *Id.*

The ALJ ultimately found that the Plaintiff's impairments were not disabling, however, based at least in part on the Plaintiff's revised onset date. (R. 27). As detailed above, the Plaintiff changed her alleged onset date at the hearing from February 10, 2012, which was the date she originally listed in her application, to her application date of September 17, 2019. (R. 43–44, 205). The ALJ reasoned:

> From the outset, the record shows that the [Plaintiff] sought treatment prior to the alleged onset date for the same medical conditions that allegedly prevent her from working. *As the [Plaintiff] did not allege an onset of disability until September 17, 2019, she inherently acknowledged the ability to work prior to that time. Her pursuit of treatment prior to the alleged onset date for symptoms and limitations similar to those alleged as medically disabling casts*

7

> *some doubt as to whether those symptoms truly prevent her from working.* Absent evidence of a significant deterioration in any of these medical conditions coinciding with the alleged onset date, the presence of these conditions prior to such time strongly suggests that the [Plaintiff's] current lack of work activity is unrelated to her medical condition.

(R. 27) (emphasis added). The ALJ then reviewed the Plaintiff's medical history commencing in March 2019 and found that she could engage in light work with certain restrictions. (R. 26–31).

The Plaintiff now argues that the ALJ improperly construed the Plaintiff's amended alleged onset date of September 17, 2019, as essentially an admission by the Plaintiff that she was able to work before that time. (Docs. 19, 21). The Plaintiff has a point.

To start, the facts of this case do not support the ALJ's inference that the Plaintiff effectively conceded—or, in the ALJ's words, "inherently acknowledged"—her ability to work prior to September 17, 2019. (R. 27). As Plaintiff's counsel now plausibly explains, the Plaintiff revised her alleged onset date at the hearing only so that it would coincide with her application date because she was not eligible for SSI benefits before that date. (Doc. 19 at 3–4). Irrespective of the merits of this strategy, the Plaintiff's modification aligns with the applicable Regulations. *See* 20 C.F.R. §§ 416.202(g), 416.501.

Moreover, it is undisputed that the Plaintiff has never worked, whether before or after her September 17, 2019, alleged onset date. (R. 44, 66, 242–47). The ALJ, in fact, concluded as much in determining that the Plaintiff had no past relevant work

experience. (R. 31). The ALJ's decision nonetheless suggests she grounded her assessment that the Plaintiff's "current lack of work activity [was] unrelated to her medical condition" solely on the Plaintiff's decision to advance her alleged onset date to September 17, 2019, rather than on the ALJ's evaluation of the pertinent medical records. (R. 27).

The court's opinion in *Kelly v. Colvin*, 2016 WL 1171160 (N.D. Ala. Mar. 25, 2016), is instructive in this respect. In that case, the ALJ discredited the claimant's allegations of pain predicated on the theory that his back impairment did not prevent him from working prior to his alleged onset date. *Id.* at *6. The record revealed, however, that the claimant had not worked in the more than two years preceding his alleged onset date or at any time afterwards. *Id.* Presented with this record, the court observed that it could not discern from the evidence before it why the claimant asserted an onset date so far removed from his last day of work. *Id.* As a result, the court remanded the case to the SSA, in part, to allow it to further develop the record regarding the claimant's capacity to work before his alleged onset date. *Id.*

Similar to *Kelly*, the ALJ here did not adequately address the Plaintiff's amendment of her onset date from February 10, 2012, to September 17, 2019. The ALJ did not question the Plaintiff at the hearing about this revision, except simply to confirm she agreed to it, nor did the ALJ discuss the change in the alleged onset date in her decision. (R. 44).

The ALJ's failure to develop a full and fair record on this issue is concerning since it is not clear from the ALJ's decision that she considered the medical evidence

9

separately from her supposition that the Plaintiff could have worked before her amended onset date of September 17, 2019. Instead, after finding that the Plaintiff "inherently acknowledged" an ability to work prior to this date, the ALJ stated that the Plaintiff's treatment in the time frame leading up to that date "establishe[d] the [Plaintiff's] longstanding history of symptoms related to headaches and arthritis, as well as her diagnosis of Raynaud's disease." (R. 27). Without more, the Court cannot properly evaluate the extent to which the ALJ's assumption that the Plaintiff was capable of working before September 17, 2019, impacted her disability determination.

The Commissioner's arguments to the contrary are unpersuasive. The Commissioner does not directly confront the Plaintiff's contention that the ALJ improperly inferred the Plaintiff's ability to work from her amended alleged onset date. Instead, the Commissioner argues generally that the ALJ was entitled to take into account evidence that predated the period when the Plaintiff's disability purportedly began. (Doc. 20 at 7); *see* 20 C.F.R. § 416.912(b). This issue is uncontested and is beside the point.

The Commissioner additionally contends that the Plaintiff fails to demonstrate that "she only amended her . . . onset date because she could not be paid prior to the date she filed her SSI application." (Doc. 20 at 8). This argument is dubious given that the revised onset date corresponds precisely to the date of the Plaintiff's SSI application, as even the ALJ acknowledged in her decision. (R. 20, 44). In any event, this matter requires further clarification for the reasons stated above.

Based on the foregoing, the Court need not address the Plaintiff's remaining claim of error.  *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (noting that it was unnecessary to review the other issues raised since the case was being remanded) (citations omitted); *see also McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (per curiam) (finding no need to analyze other issues when the case must be reversed due to other dispositive errors).  On remand, however, the Commissioner should reassess the entire record and provide sufficient explanations and readily identifiable evidentiary support for his decision.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (holding that, on remand, the ALJ must reassess the entire record) (citation omitted).

## IV.

In light of all the above, it is hereby ORDERED:

1. The Commissioner's decision is reversed.

2. The Clerk is directed to enter Judgment in the Plaintiff's favor and to close the case.

SO ORDERED in Tampa, Florida, this 23rd day of September 2024.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record